**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **MARJORIE WAGONER, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | **Case No. 07-1229-JTM** |
| ) | |
| **PFIZER, INC.,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |
| ) | |

## MEMORANDUM AND ORDER

This matter is before the court on Pfizer's motion for a protective order (Doc. 92). For the reasons set forth below, the motion shall be DENIED.

### Background

This is an age discrimination case under the ADEA, 29 U.S.C. § 621, et seq.[1] Highly summarized, plaintiffs allege that Pfizer engaged in deceptive tactics to justify its termination of employees over 40 years of age. Plaintiffs contend that one of Pfizer's key tactics was to falsely accuse an employee of violating company policies in order to establish a pretext for termination.

For example, Pfizer accused plaintiff Kirkpatrick of falsifying "starter" records for

---

[1] Plaintiffs Wagoner and Kirkpatrick also assert state law claims for intentional infliction of emotional distress.

pharmaceutical samples provided to doctors.[2]  Kirkpatrick was 54 years old in June 2005 when her new supervisor, Geoff Holt, began making derogatory remarks about Kirkpatrick's age.  On July 20, 2006, Kirkpatrick was summoned without explanation to Pfizer's Chicago regional office and falsely accused of changing the dates on her starter forms.  Kirkpatrick was terminated without an opportunity to confirm the accuracy of her starter forms and replaced with a less experienced individual who was approximately 25 years old.

## Motion for a Protective Order

To show that her starter forms were accurate and that Pfizer's accusations of misconduct were merely a pretext for age discrimination, plaintiffs scheduled five doctors for video depositions in Oklahoma City.[3]  Pfizer moves for a protective order, arguing that the anticipated deposition testimony (1) lacks foundation, (2) is irrelevant and (3) is harassment.  However, contrary to Pfizer's arguments, the court is satisfied that the information sought from the doctors is relevant *in the context of discovery* and that the depositions should proceed.

Pfizer's foundation argument is without merit and summarily rejected.  The doctors are qualified to testify whether their signatures appear on the starter forms and whether

---

[2] "Starters" are samples of pharmaceutical drugs which sales representatives leave with doctors at the end of a sales call.

[3] Kirkpatrick's sales territory included Oklahoma.  Plaintiffs believe the doctors will testify that Kirkpatrick personally witnessed the doctors signing the starter forms on the date listed and that they received the samples.

-2-

samples were received on the date indicated by the records.  Similarly, the assertion that the depositions are being conducted merely to harass Pfizer and its customers is rejected.  The doctors are professionals and capable of objecting to the depositions if they consider the discovery requests abusive or disruptive to their practice.  The lack of any objection from the doctors and their cooperation in the scheduling of the depositions dispels any notion that the doctors consider the depositions "harassment."  Moreover, plaintiffs are pursuing a source of discovery which they believe supports their claims.  The fact that the two sides disagree over the relevance of the depositions does not rise to the level of "harassment."[4]

Pfizer also contends that the anticipated deposition testimony lacks relevance because the *actual* accuracy of the forms is not important.  Pfizer argues that in order to succeed on their ADEA claims, plaintiffs must show that Pfizer did not *honestly believe* its stated reason for discharge, e.g., that Kirkpatrick and Wagoner falsified the forms.  See Heslet v. Westar Energy, Inc., 174 Fed. Appx. 434, 436 (10th Cir. Kan. 2006)("We have repeatedly held that in determining whether the employer's proffered reasons for its decision is pretextual, the court examines whether the employer had an honest belief that the employee engaged in misconduct, and considers the facts as they appeared to the person making the termination

---

[4] The doctors' irritation, if any, is more likely the result of Pfizer's manner of investigation rather than the depositions themselves.  James Batura, the director of prescription drug marketing, testified that Pfizer's practice in 2006 was to conduct a "longitudinal audit" and ask doctors if the records were accurate in cases where "form banking" or falsification of dates was suspected. Doc. 97-2, p. 97, line 3-17.  However, for reasons not entirely clear, Pfizer did not make any inquiry of the doctors in this case.  At best, Batura suggests that the doctors' confirmation of dates and signatures would not be credible.  Understandably, some doctors may not appreciate Pfizer's perception of their honesty.

decision, even though plaintiff later presented evidence in court proceedings that the allegations may have been false.").

The problem with defendant's argument is that plaintiffs are not merely arguing that Pfizer's reasons for terminating them were incorrect. Rather, plaintiffs are attempting to discover evidence of pretext through "weakness, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions." Riggs v. Airtran Airways, Inc., 497 F.3d 1108, 1118 (10th Cir. 2007)(citations omitted). For example, plaintiffs argue that discovery will demonstrate "that Pfizer had absolutely no evidence or reason to believe that Ms. Kirkpatrick had altered her starter forms, but rather conducted a sham investigation and attempted to pressure Ms. Kirkpatrick into admitting that she altered her starter forms."[5] Evidence by the doctors that the plaintiffs did not falsify their starter forms is arguably one piece of the larger question of whether Pfizer had an "honest belief" that plaintiffs falsified the forms. Given the liberal construction of relevance at the discovery stage, the court is satisfied that the doctors' depositions are relevant; therefore, the motion for a protective order shall be denied.

**IT IS THEREFORE ORDERED** that defendant's motion for a protective order (**Doc. 92)** is **DENIED.** The June 3, 2008 depositions shall proceed as scheduled and the May 23 depositions shall be rescheduled as soon as practical.

A motion for reconsideration of this order under D. Kan. Rule 7.3 is not encouraged.

---

[5] At times both parties argue the merits of factual evidence. The court expresses no opinion concerning the merits of the case and limits its ruling to discovery matters.

-4-

The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992). Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by the court in Comeau v. Rupp. The response to any motion for reconsideration shall not exceed three pages. No reply shall be filed.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 29th day of May 2008.

S/ Karen M. Humphreys
_____
KAREN M. HUMPHREYS
United States Magistrate Judge